## LYMAN COUNTY v. STATE.

1. Under Laws 1890, Chap. 1, authorizing any person deeming himself aggrieved by the refusal of the state auditor to allow a claim against the state to commence an action against the state in the supreme court, an organized county may bring such an action, being a body corporate for civil and political purposes (Comp. Laws, Sec. 572) and therefore a "person", as defined by Sec. 4746.

2. Under Laws 1881, Chap. 84, Sec. 15, amended by Laws 1891, Chap. 4, providing for the payment by the state of the costs of criminal prosecutions arising, or having arisen, in unorganized counties, the state is liable for the costs where a prosecution arose in a county then unorganized, though it was organized shortly after, and the case was removed there for trial.

3. The certification by the state's attorney, and allowance by the court, of costs in a •criminal prosecution arising in an unorganized county, required by the statute (Laws 1881, Chap. 84, Sec. 15, amended by Laws 1891, Chap. 4), is a condition precedent to their payment by the state auditor, but is not required to entitle a claimant to maintain an action against the state thereon, where their payment has been refused by the auditor.

4. When a criminal prosecution arose in an unorganized county, and the costs were payable by the state, the issuance by the county after its organization of its warrants for such costs is unauthorized; but where such warrants have been issued in good faith, they will be treated as advances made on the claims, and entitle the county to be subrogated to the rights of the claimants against the state.

(Opinion filed Dec. 23, 1896.)

Original action by Lyman county against the state of South Dakota. On demurrer to complaint. Demurrer overruled.

The facts are stated in the opinion.

*S. H. Wright,* for plaintiff.

*Coe I. Crawford,* Attorney General, for the state.

A county is a mere political subdivision of a state. It is a part of the state. It cannot sue itself; hence it cannot sue the body politic of which it is an essential part. 4 Am. & Eng. Encyc. of Law 359; Vigo Twp. v. Board, 12 N. E. 305. A state cannot be sued without its express consent, and the law allowing such suit must be strictly construed. 23 Am. & Eng. Encyc. of Law 83; Beers v. Arkansas, 20 How. (U. S.) 527; DeSaussure v. Gaillard, 127 U. S. 216; Hasner v. DeYoung, 1 Tex. 754; Raymond v. State, 54 Miss. 592, 28 Am. Rep. 382; State v. Stout, 7 Neb. 86; Owen v. State, Id. 108; Bradford v. State, Id. 109; State v. White, Id. 113; State v. Lancaster Co., 8 Neb. 218; Railroad v. State, 53 Wis. 509; Galbes v. Girard, 46 Fed. 500. It would have been a misdemeanor for the auditor to have audited the claim of plaintiff and drawn his warrant, no appropriation having been made. Laws 1895, Chap. 97, § 1. It does not appear upon the face of the complaint that the conditions of Sec. 425, Comp. Laws, have been complied with.

HANEY, J. Defendant demurs to the complaint, on the grounds that plaintiff has not legal capacity to sue, and that the complaint does not state facts sufficient to constitute a cause of action. Such facts are substantially as follows. May 20, 1893, one Mot Matson was murdered in Lyman county, then unorganized, and attached to Brule for judicial purposes. Henry Schroeder and Frank B. Phelps were accused of the crime, arrested by officers of Brule county, and an inquest was held prior to May 27th, when plaintiff became one of the duly organized counties of this state. Thereupon the accused were surrendered to the officers of the newly-organized county, who continued the prosecution. Having been indicted, Schroeder entered a plea of guilty, and was sentenced to imprisonment for life. Phelps entered a plea of not guilty, was granted a change of place of trial to Hanson county, where he was convicted, and sentenced to imprisonment for life. The judgment

was affirmed by this court (59 N. W. 471); but, before its execution began, the prisoner died, in the Hanson county jail. There were actually and necessarily expended and incurred, in and incident to such murder, prosecutions, and convictions, certain sums, stated in detail, which plaintiff has allowed, and for which its warrants have been issued and registered. Before this action was commenced, plaintiff presented its claim to the state auditor, duly authenticated, adjusted and verified and demanded its allowance; but he rejected it, assigning, as his reasons for so doing, that no provision of law required its payment, and no appropriation had been made for that purpose.

The first ground of demurrer is untenable. Each organized county is a body corporate for civil and political purposes only, and, as such, may sue and be sued, plead and be impleaded, in any court in this state. Comp. Laws, § 572. The legislature shall direct by law in what manner and in what courts suits may be brought against the state. St. Const. Art. 3, § 27. It is competent for "any person," deeming himself aggrieved by the refusal of the state auditor to allow any just claim against the state, to commence an action in this court. Laws 1890, Chap. 1. The word "person," as here used, includes not only human beings, but bodies politic and corporate. Comp. Laws, § 4746. The right of any organized county to institute an action against the state has been expressly conferred by the legislature, agreeably to the provisions of the constitution. "The civil and criminal jurisdiction of justices of the peace in organized counties in any judicial subdivision containing one or more unorganized counties, shall extend over all such unorganized county or counties in such subdivision; and all summons, warrants, orders or process issued by such justice of organized counties, shall be served or executed by the sheriff or any constable of the same county, and the costs in all criminal prosecutions in the circuit and justice courts for offenses heretofore or hereafter charged to have been committed when the same is not collected from the defendant, shall be audited and

paid out of the state treasury; but no such costs shall be so
audited or paid unless a duplicate itemized account of the same
shall be certified to as correct by the state's attorney of the
organized county and examined and allowed by the circuit court,
one of which accounts shall be preserved as a public record in
the office of the clerk of the circuit court of the subdivision;
and the court shall have full authority to disallow any or all
such costs and fees whenever it deems the same illegally or
unnecessarily incurred. And the expenses of all criminal pros-
ecutions arising or having arisen in such unorganized counties,
including the lawful cost of keeping the prisoners, shall be aud-
ited and paid out of the state treasury when the same is certi-
fied and allowed in the manner prescribed in this section. But
no fees, costs or charges shall be certified or allowed unless
the same is duly adjusted; and no fees, costs or charges shall
be so certified, allowed or audited as in this section provided,
unless the officer prosecuting the same shall attach to such
itemized account an affidavit that the same, and every item
thereof has been actually, legally and necessarily incurred, and
that no part thereof has been paid." Section 15, Chap. 84,
Laws 1891. This law was, in effect, an appropriation, valid
when enacted, and not repealed by either Chap. 111, Laws 1891,
or Chap. 97, Laws 1895. Cutting v. Taylor, 3 S. D. 11, 51 N.
W. 949; State v. Hipple, (S. D.) 64 N. W. 120.

The state is certainly liable for the expenses incurred prior
to the time of organization. Whether it should pay expenses
incurred after that time presents a difficult question. The per-
tinent portion of the statute is this: "And the expenses of all
criminal prosecutions arising or having arisen in such unorgan-
ized counties, including the lawful costs of keeping the pris-
oners, shall be audited and paid out of the state treasury."
Whatever may be the strict grammatical construction of this
language, the legislative intent is evident. It does not mean
that the expenses to be paid by the state shall arise in unor
ganized counties. It is the criminal prosecutions which must

arise therein. Such prosecutions cannot be conducted in unorganized counties. They are conducted by officers of, and in organized counties. All expenses of such prosecutions arise in organized counties. It was, undoubtedly, intended that the state shall pay all expenses actually and necessarily incurred in conducting criminal prosecutions which arise in unorganized counties; hence the state is liable for the costs and expenses of any criminal prosecution so arising, regardless of where it is conducted. Had plaintiff remained unorganized, the prosecution of Phelps and Schroeder would have been conducted in Brule or some other organized county, and the state required to pay the expenses. Does the fact that it was removed to Lyman, upon its organization, change the result? We think not. The state has undertaken to provide means for enforcing the criminal law in unorganized counties. A murder was committed in one of these counties. It gave rise to a criminal prosecution. Having thus arisen, all the expenses of such prosecution should be paid by the state. When the conditions existing in newly organized counties are considered, the justice of this conclusion will be readily conceded.

The learned attorney general contends that it does not appear upon the face of the complaint that the account has been certified as correct by the state's attorney, and allowed by the circuit court, and that such acts are conditions precedent to the bringing of an action thereon. It may be doubtful if these facts are properly pleaded, but their omission does not render the complaint demurrable. The statute controls the action of the auditor, but does not restrict plaintiff's right of action. Short v. White Lake Tp. (S. D.) 65 N. W. 432. If aggrieved by the refusal of the auditor to allow his claim, the claimant may commence an action. Sec. 1. Chap. 1, Laws 1890. Such refusal is the only condition precedent. The complaint is certainly sufficient in this respect.

Finally, it is suggested that the plaintiff cannot recover because it paid the claims, without taking assignments of each.

This contention cannot be sustained. Payment by plaintiff was not authorized. If the issuance of its warrants were regarded as "payment," in the ordinary sense of the term, such warrants would be illegal and void. The county could refuse payment thereof, and the original claimants, consisting of witnesses, jurors, officers, and other persons, would, if any of them were sufficiently interested, be required to present their claims to the state, while the innocent holders of the warrants would in most cases be practically powerless to recover what they may have invested therein. All concerned seem to have acted in good faith under a mutual mistake of law. Justice demands that the issuing of these warrants shall be regarded as advances made by the plaintiff upon claims which should have been paid by the state, and that plaintiff shall be subrogated to the rights of each claimant to whom such advances were made. We therefore hold that plaintiff can recover for such items of costs and expense as were actually, legally, and necessarily incurred in the prosecution mentioned in the complaint, and for which its warrants have been issued. The demurrer is overruled.