13789

FEDERAL LAND BANK OF COLUMBIA v. STATE HIGHWAY DEPARTMENT *ET AL.*

FEDERAL INTERMEDIATE CREDIT BANK OF COLUMBIA v. SAME

FEDERAL LAND BANK OF COLUMBIA v. STATE HIGHWAY DEPARTMENT

(173 S. E., 284)

Before WHALEY, J., County Court, Richland, January, 1933.

*Messrs. Harry D. Reed, Frank P. McGowan* and *Robinson & Robinson,* for appellants, Federal Land Bank and Federal Intermediate Credit Bank,

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey* and *J. Ingram Wilson, Assistants Attorney General* and *L. M. Cantrell,* for respondent, State Highway Department of South Carolina, and Julian Scarborough, State Treasurer of South Carolina,

February 23, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Each of these actions was brought in the County Court of Richland County, S. C. The first two cases had for their object the recovery of certain sums of money paid by the respective plaintiffs, under protest, to the State Highway Department to procure license plates to be attached to their automobiles which would entitle them to be operated over and upon the highways of the State. The claim of right of recovery in each case is that each of the plaintiffs is an agency and an instrumentality of the United States, and the actions arise under the laws and Constitution of the United States; that the plaintiff in each such case is exempt by law from the payment of such fees or taxes, and the collection thereof is a burden upon plaintiff as an agency and instrumentality of the United States; that the Highway Department, when it collected said sums from plaintiffs, turned them over to its co-defendant, Julian H. Scarborough, Treasurer of the State of South Carolina, with notice of plaintiffs' protest.

To each of these two actions the defendants demurred on the grounds that: These are suits against the State, and there is no statute authorizing suits of this nature; the fees collected were a legitimate exercise of the State's police powers; that the automobiles owned and operated by plain-

tiffs are not such instrumentalities of the United States as are exempt from taxation, but are only incidental and not necessary to the conduct of their business; that the plaintiff is not such an instrumentality of the United States as exempts it from the payment of a license fee for operating its automobiles upon the highways of the State; there is no statute which authorizes the defendants to refund to plaintiffs the fees alleged to have been paid.

The demurrer to each action was sustained, mainly upon the ground that these were actions against the State and that there is no statute which authorizes the maintenance of them; and that this is not a case where the representatives of the State are seeking to enforce an invalid or unconstitutional statute, and who would if so doing be not considered the representatives of the State.

The plaintiffs appeal upon grounds of exception set out in the transcript of record, but which are not necessary to be specifically considered.

Following this action of the trial Court, the Federal Land Bank brought its action in the same Court against the State Highway Department seeking a rule to require the Highway Department to show cause why it should not be enjoined from interfering with plaintiff's right to use its automobiles on the highways of the State in its official business without the payment of a license tax. This is the third case.

The complaint alleges that the plaintiff is a corporation organized under Acts of the Congress of the United States, with its principal place of business at Columbia, S. C., and is an agency and instrumentality of the United States; that the United States owns 82 per cent. of the capital stock of the bank, and that this action is one arising under the Constitution and laws of the United States; that the defendant State Highway Department is a department of the State of South Carolina engaged in building, maintaining, and supervising the highways of the State, and the operation of

automobiles over the same, and as such charges and collects license or privilege fees or taxes from each and every person, firm, or corporation owning and operating a motor vehicle over the highways of the State, which fees or taxes are, as plaintiff is informed and believes, collected and used for revenue only; that plaintiff advised defendant that it had acquired an automobile for its use in the necessary conduct of its business over the highways of South Carolina, and that it intended to attach to such car tags which would identify it as the automobile of plaintiff which would be used on the highways for its official business only; and that it would not pay the license tax demanded by defendant for such privilege. The defendant refused to permit plaintiff to operate its car without the payment of the license tax; if plaintiff undertook to use its car without paying the license fee and displaying the usual license tag, the driver or employee of plaintiff would be arrested and the operation of the car would be prevented; that the acts and threatened acts of the defendant are in violation of the Constitution and laws of the United States and an interference with an agency and instrumentality of the United States Government.

The prayer is for permanent injunction and restraining order *pendente lite*.

For answer to the complaint and return to the rule to show cause the defendant said: It admits so much, only, of the first paragraph of the complaint, as alleges that plaintiff is a corporation under the Acts of Congress, with its principal place of business at Columbia, S. C.

Admits so much of Paragraph 2 of the complaint as alleges that defendant is a department of the State of South Carolina, and is engaged in building, maintaining, and supervising highways and the operation of motor vehicles over them. It denies all the other allegations of the paragraph, and avers that such charges or fees as are collected by it are for regstration and license plates, and are used primarily and wholly in the exercise of the police power of the State.

Admits all of the allegations of Paragraph 3, except so much as charges that the fees are collected as a tax, and asserts that they are collected as a regulatory fee in the exercise of the police power of the State. It denies on information and belief the allegations of Paragraphs 4 and 5, and denies all allegations of the complaint not specifically admitted.

For further defense it is alleged that the Court is without jurisdiction to entertain this action, for the reason that plaintiff is attempting to restrain the enforcement of a valid criminal statute enacted in the exercise of the police power of the State; that the plaintiff is not directly or indirectly a part of the United States government, but is a separate and individual corporation, engaged in business for the private profit and advantage of its stockholders; that the plaintiff has a complete and adequate remedy at law; that the Court is without jurisdiction to entertain this action because the complaint shows on its face that this is a suit against the State and there is no statute authorizing the bringing of such action.

Judge Whaley granted the prayer for permanent injunction. In his order he states this: "The essential facts are admitted and the only questions are questions of law dependent upon the construction of the statutory law of this State," etc.

The record does not disclose that an agreed statement of facts was submitted to the trial Court, nor has such statement been submitted to this Court. The complaint alleges that the automobile spoken of therein is used in the business of the bank, but there is no disclosure of the nature of such use, and the answer distinctly denies this allegation of the complaint. Did it simply take employees and officers of the bank to and from their homes? It is conceivable that the question whether the use was a necessary one might well arise. The defendant in its answer alleges that the bank is operated for the profit of its stockholders, but there is no

proof of such allegation. This, too, might possibly be an issue of moment.

The order granting the injunction is predicated upon the postulates that the license charge is a tax; that the State cannot in the exercise of its police power impose a burden upon a federal instrumentality; that Federal Land Banks, together with their property and income, which consists of mortgages and bonds and the income therefrom, are instrumentalities of the United States, and are exempt from federal, State, municipal, and local taxation under the Act of Congress; that the plaintiff is without adequate remedy at law, but that an injunction in a suit in equity like this lies.

The defendant challenges the correctness of these conclusions by nine exceptions, but counsel for defendant discuss them, and the plaintiffs' exceptions in the other two cases, under three heads, viz.: Are the fees paid by plaintiff for registration and identification of their automobiles a tax from which plaintiffs are exempted, or is it a fee exacted by defendant in the exercise of the valid police power of the State?

Did the Court have jurisdiction to entertain these actions; there being no statute to permit a suit being brought to recover money paid for the registration and operation of automobiles over the highways of the State?

Did the Court have authority to issue an order of injunction restraining the defendant from interfering with the operation by plaintiff of its automobiles on the highways of the State without paying the proper registration or license fees?

The plaintiffs approach the questions for decision in all three cases by framing these issues:

The right of the defendant State Highway Department to impose a tax or charge on the plaintiffs, whether it be termed a license tax or other charge, for the use by these

banks of their automobiles on the highways of the State in the necessary conduct of their business.

The right of the plaintiffs to recover such tax or charge when paid under protest.

The right of the plaintiff Federal Land Bank to enjoin the collection of such tax or charge by the State Highway Department.

It will not be necessary to take up for detailed discussion each of these various issues, but all of them will be included in the ultimate conclusions of the Court.

The appeals in the first two cases are to be disposed of by the answer to the question whether these were actions against the State.

It is hardly conceivable that the plaintiffs seriously contend that the State Highway Department is not an integral part of the State government. They themselves so allege in their complaint. The tax commission of the State stands in the same relation to the State in its sphere as does the State Highway Department in the scope of its functions; each is a department of the State government.

In the case of *Monarch Mills v. S. C. Tax Commission,* 149 S. C., 219, 146 S. E., 870, 873, it was held that a proceeding against the tax commission to recover interest on taxes refunded by the State is a suit against the State for which the consent of the State is necessary. The Court said:

"This proceeding * * * is, furthermore, a suit against the state. * * * That the state may not be sued without its consent is the rule too well established to need citation of authority"—citing *State, etc., v. State Dispensary Commission,* 79 S. C., 316, 60 S. E., 928.

"The suit, one against a department of the state government, was, of course, actually a suit against the state. The action could not be maintained, therefore, except by the

*express consent* of the state; and that consent had to be given by legislative authority."

That is the language of this Court in the case of *Fann v. State Highway Department* found in 155 S. C., 219, 152 S. E., 429, 430, and settles definitely the question that the highway department is a department of the State government and cannot be sued except by express authority granted by the Legislature of the State.

To the same effect is the decision of this Court in the case of *United States Casualty Company v. State Highway Department,* 155 S. C., 77, 151 S. E., 887.

If further authority were needed in support of this position, it may be found in the opinion of Mr. Chief Justice Hughes of the Supreme Court of the United States in the case of *State of Missouri v. Fiske et al.,* 290 U. S., 18, 54 S. Ct., 18, 20, 78 L. Ed. . . . . .

The demurrer to each of the first two cases was properly sustained, since no legislative authority for maintaining such actions against the highway department of the State was shown.

Is the proceedings in the third case, on the equity side of the Court, maintainable, or is it, too, a suit against the State which must be brought only upon express authority given by legislative enactment?

If the question were an open one in this State, the writer of this opinion would hold that this proceeding is a suit against the State, and would rely upon the language of Mr. Chief Justice Hughes in the case just above referred to. There the State of Missouri had intervened in a suit in the Probate Court of the City of St. Louis between heirs at law and legatees of certain decedents, in the settlement of estates, to collect certain inheritance taxes. Respondents sought an injunction by the United States District Court to restrain the State of Missouri from prosecuting its proceeding. The State appeared specifically for the purpose and moved to dismiss the bill upon the ground, *inter alia,* that it was a suit

against the State which had not consented to be sued, and was in violation of the Eleventh Amendment of the Federal Constitution. The District Court granted the motion of the State and dismissed the bill. The Circuit Court of Appeals [62 F. (2d), 150], reversed the action of the District Court. The Supreme Court reversed the decision of the Circuit Court of Appeals, and remanded the case to the District Court, with directions to dismiss the bill against the State. The Chief Justice said:

"The Eleventh Amendment is an explicit limitation of the judicial power of the United States. 'The Judicial power of the United States shall not be construed to extend to any suit in law *or equity* (italics added), commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.' However important that power, it cannot extend into the forbidden sphere. Considerations of convenience open no avenue of escape from the restriction. *The 'entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given'* "—citing *Ex parte State of New York,* 256 U. S., 490, 41 S. Ct., 588, 65 L. Ed., 1057.

"Such a suit cannot be entertained upon the ground that the controversy arises under the Constitution and laws of the United States"—citing authorities.

But the question seems to be set at rest in this State by the ruling of this Court in the case of *Santee River Cypress Lumber Co. v. Query et al.,* 168 S. C., 112, 167 S. E., 22. The writer of this opinion did not concur in the majority opinion of that case, but is bound by it. That case holds that, if our lawmaking body desired and intended to give an adequate remedy at law for the recovery of illegal documentary taxes paid under protest by a taxpayer, and wished to prevent a Court of Equity from exercising its powers of injunction as to the collection of such taxes, very quickly, easily, and simply, the General Assembly could have amend-

ed the provisions of the Act of 1928 to carry out fully its intention. Its failure to amend in any respect Section 29 of the Act of 1928 (Code 1932, § 2548), seems to us to evidence the legislative intent to permit an aggrieved taxpayer to seek redress in the Courts of equity.

The law is clear that the General Assembly must provide a plain and adequate remedy at law for the relief of an aggrieved taxpayer before the Courts of equity will be denied the right to give him the relief which he seeks: If a taxpayer mistakes his remedy because the law is not clearly expressed, fails to seek injunctive relief, pays the taxes, and seeks to recover in a Court of law only to find that the method he has pursued is wrong, then he is in the unfortunate position of being deprived of the right to question the legality of the tax paid by him. This situation, of course, should not be permitted.

We have seen in the result of the other two suits that the plaintiff has no adequate remedy at law to recover the taxes it has paid under protest. Governed by the holding of the Court in *Santee River Cypress Lumber Company v. Query et al., supra,* it must be held that plaintiff has authority to maintain this suit in equity to test the validity of the tax or charge, against the payment of which it contends.

It remains to consider and determine these questions. ■ Is the plaintiff an agency and instrumentality of the United States? Is the automobile involved in the proceeding an instrumentality of the United States? Are they exempt from the payment of the license fee required of the owners of automobiles for the privilege of having them registered and licensed to be used over the highways of the State?

It is conceded that the plaintiff, the Federal Land Bank of Columbia, is a corporation organized under the Acts of the Congress of the United States, with its principal place of business at Columbia, S. C.

Section 931, Title 12, c., 7 of the United States Code Annotated, provides that: "Every Federal land bank and every national farm loan association, including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal and ·local taxation, except taxes upon real estate held, purchased, or taken by said bank or association under the provisions of Section 761 and Section 781 of this chapter. First mortgages executed to Federal land banks, or to joint-stock land banks, and farm loan bonds issued under the provisions of this chapter, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation."

This language is so explicit that it would scarcely need to be interpreted, but it has undergone judicial interpretation in numerous cases. The immediate issue here involved is to determine what are instrumentalities of the United States government and which of them are exempt.

As far back as *McCulloch v. Maryland*, 4 Wheat., 316, 4 L. Ed., 579, the Supreme Court of the United States held, and has consistently held ever since, that the instrumentalities of the federal government are exempt from taxation by a state. See, also, *Educational Films Corp. v. Ward*, 282 U. S., 379, 51 S. Ct., 170, 75 L. Ed., 400, 71 A. L. R., 1226, and cases there cited.

In the case of *South Carolina v. United States*, 199 U. S., 437, 26 S. Ct., 110, 113, 59 L. Ed., 261, 4 Ann. Cas., 737, Mr. Justice Brewer, delivering the leading opinion, quoted from the case of the *Collector v. Day (Buffington v. Day)*, 11 Wall., 113, 20 L. Ed., 122, as follows: "It is admitted that there is no express provision in the Constitution that prohibits the general government from taxing the means and instrumentalities of the states, nor is there any prohibiting the states from taxing the means and instrumentalities of that government. In both cases the exemption

rests upon necessary implication, and is upheld by the great law of self-preservation; as any government, whose means employed in conducting its operations, if subject to the control of another and distinct government, can exist only at the mercy of that government. Of what avail are these means if another power may tax them at discretion?"

The same principle is announced by Mr. Justice Hughes in the case of *Willcuts, Collector, v. Bunn*, 282 U. S., 216, 51 S. Ct., 125, 126, 75 L. Ed., 304, 71 A. L. R., 1260. He said:

"The well-established principle is invoked that a tax upon the instrumentalities of the States is forbidden by the Federal Constitution, the exemption resting upon necessary implication in order effectively to maintain our dual system of government.

"The familiar aphorism is 'that, as the means and instrumentalities employed by the general government to carry into operation the powers granted to it are exempt from taxation by the states, so are those of the states exempt from taxation by the general government.'"

It is clear that the State may not tax the instrumentalities of the general government. But it is urged by the highway department that the license fee for automobiles is not a tax, but is a vaid exercise of the police power of the State. If the force of that argument be admitted, that does not save the situation. It would still be a burden imposed by the State upon an instrumentality of the general government.

The honored and beloved former Justice Holmes of the Supreme Court was a stickler for upholding the rights of the States and individuals. He was a liberal. In delivering the opinion of the Supreme Court in the case of *Johnson v. State of Maryland*, 254 U. S., 51, 41 S. Ct., 16, 65 L. Ed., 126, he said:

"The plaintiff in error was an employee of the Post Office Department of the United States, and while driving a government motor truck in the transportation of mail over a

post road from Mt. Airy, Maryland, to Washington, was arrested in Maryland, and was tried, convicted and fined for so driving without having obtained a license from the State. He saved his constitutional rights by motion to quash, by special pleas which were overruled upon demurrer and by motion in arrest of judgment. The facts were admitted and the naked question is whether the State has power to require such an employee to obtain a license by submitting to an examination concerning his competence and paying three dollars, before performing his official duty in obedience to superior command."

The opinion cites the rule declared in *McCulloch v. Maryland, supra;* that from the case of *Osborn v. Bank of United States,* 9 Wheat., 738, 867, 6 L. Ed., 204, 234, and others, and continues in the following language: "It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them and pay a fee for permission to go on. Such a requirement does not merely touch the Government servants. remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the Government has pronounced sufficient."

We deduce from this case the conclusion that a servant or employee of the United States government while engaged in the discharge of his duties to the government is exempt from interference by the law or regulation of a state, and instrumentalities of the government, while in use in the necessary business of the government, are exempt from any State, municipal, or local tax or license. It is not, however, to be understood that we hold that an employee of the United States government may use an instrumentality of that government for his own convenience and pleasure, and he and it be immune from liability to the State law.

The trial Judge in his order of injunction has held that the automobile involved in that case is in use and is to be used in the conduct of the business of the Federal Land Bank of Columbia, and there is nothing in the record to traverse his finding.

It is the judgment of this Court that all the exceptions are overruled, and the judgment of the trial Court in each of the cases heard on appeal is affirmed.

Mr. Chief Justice Blease, Messrs. Justice Stabler and Carter and Mr. Acting Associate Justice W. C. Cothran concur.